# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-07-00105-CV
---

**Trian LLC, Appellant**

**v.**

**NovaStar Mortgage, Inc., Appellee**

---
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. D-1-GN-04-004007, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**
---

## M E M O R A N D U M   O P I N I O N

Appellee NovaStar Mortgage, Inc. is a company that purchases mortgage loans and related mortgage servicing rights from companies that originate and process mortgage loans. In late 2002, it entered into a contract with appellant Trian, LLC, which is a company that originates, underwrites, and processes applications for residential mortgage loans, under which NovaStar would buy and service mortgage loans originated by Trian. In late 2004, NovaStar sued Trian, alleging that Trian breached the parties' contract when it did not repurchase three loans as required by the contract. The trial court granted summary judgment in NovaStar's favor, awarding NovaStar $168,667.80 in damages and $41,785 in trial court attorney's fees, plus costs, prejudgment interest, and conditional appellate attorney's fees. On appeal, Trian contends that the trial court erred in granting summary judgment because NovaStar did not prove there was no issue of material fact as

to its breach of contract claim and because Trian raised a fact issue as to its affirmative defense of estoppel. We affirm the trial court's judgment.

**Standard of Review**

To be entitled to summary judgment on a claim for breach of contract, a plaintiff must prove that no question of material fact remains as to the following four elements of the claim: (1) a valid contract existed between the parties; (2) the plaintiff performed or tendered performance; (3) the defendant breached a duty it owed under the contract; and (4) the plaintiff was damaged as a result. *Roundville Partners, L.L.C. v. Jones*, 118 S.W.3d 73, 82 (Tex. App.—Austin 2003, pet. denied); *see Kendziorski v. Saunders*, 191 S.W.3d 395, 402 (Tex. App.—Austin 2006, no pet.) (in reviewing summary judgment, we resolve doubts and take as true evidence in favor of nonmovant; movant is entitled to summary judgment if it demonstrates there are no genuine issues of material fact and establishes all elements of claim as matter of law). NovaStar established that the parties had a valid contract, which contained a provision that, under certain circumstances, required Trian to buy back loans sold to NovaStar; NovaStar performed its obligations under the contract, purchasing a number of loans from Trian, including the three loans at issue here; the first three payments were missed on all three loans, triggering Trian's contractual obligation to repurchase the loans from NovaStar; NovaStar demanded that Trian buy back the loans as provided in the contract; and Trian refused. Thus, unless Trian presented summary judgment evidence sufficient to raise a fact issue on one of the elements of NovaStar's claim or on each element of one of Trian's affirmative defenses, the trial court properly granted summary judgment in NovaStar's favor. *See Hope's Fin. Mgmt. v. Chase Manhattan Mortgage Corp.*, 172 S.W.3d 105, 108 (Tex. App.—Dallas 2005, pet. denied).

## Factual Background

The parties' contract provides that Trian "will be obligated to repurchase any loan in which the borrower does not make one of the first three scheduled Principal and Interest payments due to [NovaStar] under the Mortgage Note" (the "buy-back provision").[1] On or about November 3, 2003, Trian closed two loans to a person who claimed to be named Brittany Nguyen. The loans were for $218,222.74 and $54,497.03. It was later discovered that the person who took out the loan had stolen Nguyen's identity; the thief has not been identified. On or about January 4, 2004, Trian originated a $232,000 loan to Jason Maxwell. NovaStar bought the Nguyen and Maxwell loans, but on November 18, 2004, after Nguyen and Maxwell failed to make any of the first three scheduled payments, NovaStar sent a demand letter asking Trian to buy back the loans pursuant to the contract provisions.[2] Trian refused, and NovaStar filed suit.

---

[1]  The contract also includes a clause that provides that, upon discovery of a material misrepresentation, NovaStar could require Trian, within sixty days of notice, to repurchase "any loan containing such material misrepresentation," and an indemnification clause under which Trian agreed to indemnify NovaStar from any loss it incurred arising out of "the inaccuracy or breach of any warranty or representation made by [Trian] in this Agreement, or the breach by [Trian] of any obligation or covenant to be performed by it under this Agreement." Trian argues that NovaStar cannot rely on the indemnification or misrepresentation provisions, but NovaStar responds that it is not suing under those clauses and is relying solely on the buy-back provision.

[2]  According to NovaStar's motion for summary judgment, NovaStar foreclosed on the Nguyen and Maxwell properties and sold them to third-parties, reducing the amount of damages it sought from Trian accordingly. The loan principals on the Nguyen loans totaled $272,719.77, NovaStar incurred $52,521.31 in lost interest and maintenance costs, and the property was sold for $236,000, of which NovaStar netted $204,984.75; NovaStar's net loss on the Nguyen loans was therefore $120,256.33. The principal on the Maxwell loan was $231,814.47, NovaStar incurred $24,803.90 in lost interest and maintenance costs, and the property was sold for $175,500, of which NovaStar netted $158,206.90; NovaStar's net loss on the Maxwell loan was $98,411.47. NovaStar offset its damages by a $50,000 credit it owed Trian on other loans. Thus, NovaStar asserted that Trian owed NovaStar a total of $168,667.80 ($120,256.33 plus $98,411.47, less $50,000).

NovaStar moved for summary judgment, pointing to the contract's provisions and providing documentation showing the sums NovaStar paid for the loans, the sums paid in maintaining and servicing the properties, and that the first three payments on all three loans were never paid. NovaStar also provided proof that it demanded Trian's action under the contract and that Trian refused to comply. In response to NovaStar's motion for summary judgment, Trian asserted that the borrower on the Nguyen loans had committed identity theft in obtaining the loans and, thus, there was no actual borrower whose default would trigger the buy-back provision. Trian also contended that because Trian relied on an inaccurate credit report provided by NovaStar in making the loans, NovaStar was contributorily or comparatively negligent in causing the loss on the Nguyen loans. As for the Maxwell loan, Trian argued that because a NovaStar underwriter decided to overlook "certain negative aspects of borrower Maxwell's credit history," NovaStar was estopped from seeking recovery from Trian. Trian asserted that NovaStar "induced Trian to sell the loan to NovaStar by . . . independently approving the Maxwell Loan."

NovaStar replied to Trian's response, asserting that Trian had not refuted that it had a contractual duty to buy back the Nguyen and Maxwell loans and arguing that the plain language of the contract negated the burdens that Trian was attempting to place on NovaStar for the writing of the loans. NovaStar argued that "Trian contractually shifted to itself the risk of loss under the circumstances here. As a matter of law, therefore, NovaStar owed no underwriting or other duties to Trian." NovaStar contended that Trian had not raised a fact issue as to whether NovaStar owed any duties to Trian beyond those set out in the contract; that the Nguyen credit report was prepared using information supplied by credit reporting agencies and that Trian thus would have gathered the

same information had it used a report from an agency other than NovaStar; that NovaStar did not "approve" the Maxwell loan; and that even if there was evidence of NovaStar's approval of the loan, Trian still had an absolute duty to buy back the loan, regardless of the reason for the default.

**The Nguyen Loans**

On NovaStar's claims related to the Nguyen loans, Trian asserts that the buy-back provision arises only if "the borrower does not make one of the first three scheduled Principal and Interest payments," but because the person who took out the loans committed identity theft, there was no "borrower" or "mortgage note" under the NovaStar/Trian contract, and its contractual buy-back duties were not triggered by the default on the Nguyen loans. Trian also argues that NovaStar is estopped from seeking the buy back of the Nguyen loans because Trian decided to make the loans after reviewing a credit report prepared by NovaStar.

Trian first contends that because the loans were made in Nguyen's name as a result of identity theft, the buy-back provision was not triggered. Trian's argument boils down to this: the Nguyen loans were made through fraud. There is no legitimate borrower on the loans, and Nguyen is not obligated on the loans because she was the victim of identity theft and did not sign the mortgage papers. Because there is no legitimate borrower, Trian insists, the mortgage note is a sham, and the buy-back provision cannot be triggered by a sham note and borrower. We disagree.

The parties' contract does not include provisions related to fraud or identity theft. It does not provide protections for Trian in the event of a fraudulently obtained loan or include provisions allocating risks and losses due to fraud. The buy-back provision is straight-forward: if a borrower misses one of the first three payments on a mortgage, Trian is "obligated to repurchase"

5

the loan. The contract does not shift the burden of loss to NovaStar in case of fraud, therefore the loss must remain on Trian, as provided by the plain language of the contract. Trian has not provided any authority to support its argument that because the loans were obtained through fraud, legally, there is no borrower or mortgage note. We cannot imply or read into the contract language related to how the parties allocated loss due to fraud. We can only rely on the plain contractual language and the facts as established by the parties' summary judgment evidence. The real Brittney Nguyen did not take out the loans, but someone else, referred to as Jane Doe or "Brittney Nguyen" in various filings, did. Jane Doe or "Brittney Nguyen" is the borrower, and she did not make any of the first three payments on the loan. Although the loans were obtained through fraud, the loans were made to a borrower, who defaulted immediately on the loans. Indeed, Trian sought and obtained a default judgment against Jane Doe that found that Doe was the owner of the property, that the promissary notes and deeds of trust constituted valid liens, and that Trian had the right to foreclose on the property. NovaStar established that the loans were made by Trian, bought by NovaStar, and defaulted on by the sham borrower. Trian is thus obligated to repurchase the loans unless it can raise a fact issue as to each element of its estoppel defense.

Trian states that it "ordered [the October 2003] credit report from NovaStar" and that NovaStar is estopped from asserting its claim against Trian because the report contained inaccurate information. Trian says, "In sum, NovaStar is now asserting that Trian should not have made the Nguyen loans, contrary to its position that Nguyen applicant was credit worthy."

A party asserting estoppel must show: "(1) a false representation or concealment of material facts; (2) made with actual or constructive knowledge of those facts; (3) to a party without knowledge or the means of knowledge, of those facts; (4) with the intention that it should be acted

6

on; and (5) the party to whom it was made must have relied or acted on it to his prejudice." *Ghashim v. State*, 104 S.W.3d 184, 188 (Tex. App.—Austin 2003, no pet.).

Trian states that it relied on a credit report provided by NovaStar in writing the Nguyen loans. The summary judgment evidence includes the report, dated October 2, 2003, which is based on information obtained from three credit reporting agencies, does not reflect any irregularities or fraud alerts related to Nguyen's credit history, and does not list two other mortgages that were taken out in Nguyen's name in September 2003. Although the October report does not include a fraud alert or the September 2003 loans, it does reflect about twenty inquiries into Nguyen's credit within just over one month's time, between August 22 and October 2, 2003, including inquiries by at least six other mortgage companies. A later credit report, dated March 11, 2004, shows the two additional loans that were opened in Nguyen's name in September 2003 and has a fraud alert that states that Nguyen is the possible victim of identity theft. The record also includes a letter from Nguyen stating that she learned in early February 2004 that she was the victim of identity theft.

Both Nguyen credit reports were printed from a NovaStar website, www.NovastarIS.com. Although the October 2003 report was printed from the NovaStar website, it states that it was prepared by CSC Mortgage Services for Trian, based on information obtained from the Trans Union, Experian, and Equifax Information Services credit reporting agencies. The report states that CSC prepared the report but had not verified the information. Similarly, the March 2004 report was prepared for NovaStar by Chase Credit Research using information from the same three reporting agencies, and Chase stated it had not verified the information. Both reports

state, "While this report is being used for some real estate lending purposes, it is not a Residential Mortgage Credit Report as defined by FNMA, FHLMC and FHA/VA guidelines."

Trian's argument is that because NovaStar provided Trian with the October 2003 report, which did not include a fraud alert or show two September mortgage loans taken out in Nguyen's name, NovaStar essentially acquiesced to Trian's making of the Nguyen loans and may not now assert its claims related to the loans. We disagree.

First, Trian has presented no evidence to show that NovaStar had actual or constructive knowledge of the true facts or that it provided the October 2003 report to Trian, intending that Trian would write the loans despite the theft of Nguyen's identity. The report may have been given to Trian by NovaStar but it was prepared by CSC Mortgage Services based on information provided by three credit reporting agencies. NovaStar did not collect the information and there is no indication in the record that NovaStar had any duty to vet the information, either in regards to its relationship with Trian or in general as a company that bought credit reports from report providers, or that NovaStar in any way warranted the information contained in the report. Finally, the evidence does not raise a fact issue as to whether the October 2003 report contains a material misrepresentation. At the time of the report, the identity theft had not been discovered and, thus, there could not have been a fraud alert noted. Further, the report was run on October 2, 2003, the record does not establish when in September the other mortgage loans were written, and there is no evidence as to how long it takes for credit information to be reported. Trian did not establish that the September loans, knowledge of which it argues would have stopped it from writing the loans,[3] should have been reflected on the report run on October 2, 2003. Trian did not raise a fact

---

[3] Trian's evidence does not explicitly establish this fact, but it can be implied from the evidence and arguments. In his affidavit, Martin Cantu, Trian's president, states that Trian paid

issue as to each element of estoppel, *see Ghashim*, 104 S.W.3d at 188, and therefore the trial court did not err in granting summary judgment related to the Nguyen loans in NovaStar's favor.

**The Maxwell Loan**

With regard to the Maxwell loan, Trian argues that NovaStar is estopped from seeking to recover for that loan because it "independently approv[ed] the Maxwell loan while overlooking negative aspects of Maxwell's credit history." We disagree.

As summary judgment evidence, Trian produced emails and notes by Sharon Davis, a Trian underwriter.[4] Davis wrote an email to Stephanie Verdugo, a NovaStar underwriter, explaining that Trian had received an application from Maxwell for "an 80% Cash-out Refinance on a home that is one year old," but that Maxwell had "been making 'interest only payments since 2/02 and is labeled 'Construction Loan.'" Davis said she had explained that Trian "cannot do a cash-out on a 'construction loan' and the Broker's response is that they have been living there for 1 year with a history of making payments." Verdugo responded, "[W]e should be fine on this as long as we can evidence that the house has been complete and the borrower has been residing in the house for the last year and we can evidence who all is on title." A week later, Davis made notes that she spoke with Verdugo about the late payments. Verdugo said Trian should get a letter from the bank

---

NovaStar for the report, that the report "was not an accurate representation" of Nguyen's credit because it did not disclose the identity theft or the September loans, and that "Trian would not have made the Ngyuen [sic] loans but for the NovaStar credit report." Cantu does not specifically aver that Trian would not have written the loans if it had known about the September loans.

[4] Cantu's affidavit, attached to Trian's motion for summary judgment, also states that a "NovaStar Loan Approval Summary for the Maxwell loan" was attached as exhibit A-3. However, the clerk's record does not contain this exhibit, and communications with the trial court clerk's office confirmed that they do not have the exhibit in their possession.

9

that wrote the construction loan "stating that the payments were not required and were made above and beyond requirements of loan and we should be OK." Davis whether Trian should penalize Maxwell, and Verdugo told her, "'No. As long as you document they were not required.' Then added, 'But also, verify previous housing history to complete the 24 months history.'"

Davis next spoke to the vice-president of the Amarillo Bank, who explained that Maxwell's wife died of cancer just before the construction loan matured and that the bank allowed the family to remain in the home while they dealt with their grief. Maxwell told the bank that he would make payments if possible and refinance when he was able, and the bank told Davis that "[t]he payments were not required and were made above and beyond the requirements of the note." The vice-president also explained that at least one payment was processed by the bank one month after it was received from Maxwell and that the delay was not Maxwell's fault. The vice-president sent Davis a letter explaining in writing that shortly after the Maxwells began construction, Mrs. Maxwell was diagnosed with terminal lung cancer; she died shortly after the house was completed. The bank is more than 100 years old and requires its employees to be "attuned to our customers and their needs," and the vice-president said, "[d]uring this period of grief, Mr. Maxwell did not need a well secured bank making demands." Further, Maxwell and his builder had a dispute about overcharges, which Maxwell ultimately won in a lawsuit. The letter stated, "In the interim period, the note did not have an interest repayment schedule; however, Mr. Maxwell did make monthly interest payments." Finally, the vice-president explained that Maxwell made an interest payment in September 2003, but that it did not get posted to Maxwell's account until October, when Maxwell pointed out the omission at the time he made the October payment.

10

Trian argues that NovaStar "induced Trian to sell the loan to NovaStar by NovaStar independently approving the Maxwell Loan while overlooking negative aspects of the borrower's credit history" and that, because NovaStar "overlook[ed] its own credit-worthiness guidelines," accepting the risk that Maxwell might default, NovaStar should not be permitted to shift that risk to Trian and demand Trian's compliance with the buy-back provision.

According to the evidence, NovaStar's underwriting guidelines required "that a borrower's payment status be '0x30' or not late in the last 30 days." The evidence establishes that, when a question arose about Maxwell's late payments, Trian contacted the bank that made the construction loan in question and was informed that Maxwell had made payments when not required to do so and that his payments were "above and beyond" the loan's requirements. The bank also informed Trian that Maxwell had made payments in both September and October 2003 but that the September payment was posted late due to the bank's handling of the payment, not because Maxwell had paid late. Thus, not only did the bank explain that Maxwell had not been late in the last thirty days, it explained that Maxwell had made interest payments when not required to do so. NovaStar did not provide to Trian any information about Maxwell's credit history; it merely informed Trian of what information was necessary to learn about Maxwell's construction loan. Trian obtained that information from the bank, and from the evidence provided, the bank's information showed that Maxwell was not in violation of NovaStar's "'0x30' or not late in the last 30 days" requirements.

Further, Trian did not present evidence to raise a fact issue as to whether NovaStar provided false information, knew about the misrepresentation, or intended Trian to rely on the misrepresentation. Trian did not show that NovaStar provided any information about

11

Maxwell's credit history. NovaStar's underwriter discussed Maxwell with Trian's underwriter, but NovaStar made no representations about whether Maxwell qualified for the loan. NovaStar only explained what it would require to consider him qualified. Nor is there any evidence to show that NovaStar knew that Maxwell was not credit-worthy or that it had any information about Maxwell to contradict what Trian learned from the bank. Because Trian did not present evidence raising a fact issue about each element of estoppel, *see Ghashim*, 104 S.W.3d at 188, the trial court did not err in granting NovaStar summary judgment on its claims related to the Maxwell loan.

## Conclusion

Having considered Trian's complaints related to the Nguyen and Maxwell loans and having determined that Trian failed to raise a fact issue to negate NovaStar's entitlement to judgment as a matter of law under the buy-back provision, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: August 31, 2009

12